# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                          No. CR 21-0562 JB

JAIME VALDEZ,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>[1]

      **THIS MATTER** comes before the Court on the Defendant's Appeal of Detention Order, filed September 2, 2021 (Doc. 21)("Appeal"). Defendant Jaime Valdez appeals the Order of Detention Pending Trial that The Honorable John F. Robbenhaar, United States Magistrate Judge for the United States District Court for the District of New Mexico, issued on May 12, 2021. See Order of Detention Pending Trial, filed May 12, 2021 (Doc. 17)("Detention Order"). The Court held a hearing on October 25, 2021. See Clerk's Minutes at 1, filed October 26, 2021 (Doc. 34). The primary issue is whether the Court should release Defendant Jaime Valdez from detention pending his trial, given that there is a rebuttable presumption under 18 U.S.C. § 3142(e)(2) that "no condition or combination of conditions will reasonably assure the safety of any other person

---

[1]In its Sealed Memorandum Opinion and Order, filed November 18, 2021 (Doc. 41)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court publishes a public version. See Sealed MOO at 1 n.1. The Court gave the parties 14 calendar days to provide notice of any proposed redactions. See Sealed MOO at 1 n.1. The parties have not contacted the Court or made any filings within CM/ECF to indicate that they have any proposed redactions. Consequently, the Court is now re-filing the Sealed MOO in an unsealed form.

and the community" in his case.  For the reasons stated below and on the record, the Court will

deny Valdez' Appeal from the Detention Order.

## FINDINGS OF FACT

The Court takes its facts from the Indictment, filed April 22, 2021 (Doc. 3)("Indictment"),

the United States Probation Office's Pretrial Services Report, filed May 12, 2021 (Doc. 14)("Bail

Report"), and the Arraignment and Detention Hearing, see Liberty Tape Recorder at 00:29:46-

00:48:18 (May 12, 2021)("Liberty").  Valdez is presumed innocent of all charges.  See Estelle v.

Williams, 425 U.S. 501, 503 (1976)("The presumption of innocence, although not articulated in

the Constitution, is a basic component of a fair trial under our system of criminal justice."  (citing

Coffin v. United States, 156 U.S. 432, 453 (1895))); In Re Winship, 397 U.S. 358, 365,

(1970)("[W]e explicitly hold that the Due Process Clause protects the accused against conviction

except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged.").  For the purpose of deciding Valdez' Appeal only, the Court finds the

following facts by a preponderance of the evidence:

1.     Valdez, thirty-two years old, was born in Las Cruces, New Mexico, in 1989.  See

Bail Report at 1.

2.     Valdez' mother, Becky Trujillo, resides in Las Cruces, and is "employed as a

restaurant manager."  Bail Report at 1.

3.     Valdez has one brother, Mark Jr., thirty-five years old, who also lives in Las Cruces.

See Bail Report at 1.

4.     Valdez is in regular contact with his family members.  See Bail Report at 1.

5.     Valdez' father, Mark Valdez, is deceased.  See Bail Report at 1.

6.      Valdez has been in a relationship with Tracy Collinger since 2018.  See Bail Report at 1.

7.      Valdez has an eleven-year-old daughter from a previous relationship.   See Bail Report at 1.

8.      Valdez has resided in Albuquerque, New Mexico, since approximately 1998, when he moved to Albuquerque from Las Cruces.  See Bail Report at 2.

9.      Valdez has a record of failures to appear.  See Bail Report at 4-10.

10.     Valdez travels about once a month to Mexico to visit family members, even though he does not have a passport or visa.  See Bail Report at 2.

11.     Valdez finished eighth grade "while in the custody of the New Mexico Children Youth and Families Department," but did not attend high school.  Bail Report at 2.

12.     Valdez is currently unemployed.  See Bail Report at 2.

13.     Valdez previously has worked as a laborer in Durango, Colorado.  See Bail Report at 2.

14.     Valdez has employment skills:

[H]e can do concrete work, asphalt work, he's done construction in the past, he's also done landscaping, and he's informed me that there are least three different avenues for him to gain employment, should Your Honor choose to release him. One is at Tumbleweed Landscaping, another is at a tire store on Isleta Boulevard, and also Valdez's girlfriend's family is heavily involved in the construction industry and could also provide inroads to employment there as well.

Liberty at 38:15-39:10 (Fooks).

15.     Valdez has been charged with criminal conduct twenty-six times, not including the current charges.  See Bail Report at 4-10.

16.     Valdez's criminal history is below.

- 3 -

| Date of Arrest | Agency | Charge | Disposition |
|---|---|---|---|
| 01/16/2002 (Age 13) | Second Judicial District Court; Albuquerque, NM; Docket No.: D-202-JR-2002-00099 | Assault Upon a School Employee (misdemeanor) | 01/22/2003: Dismissed |
| 04/17/2002 (Age 13) | Second Judicial District Juvenile Court; Albuquerque, NM; Docket No.: D-202-JR-2002-00700 | Ct. 1: Burglary (felony) Ct. 2: Conspiracy Burglary (felony) Ct. 3: Attempted Larceny (misdemeanor) Ct. 4: Tampering With Evidence (felony) Ct. 5: Possession of Burglary Tools (felony) Ct. 6: Attempted Burglary (misdemeanor) Ct. 7: Conspiracy Burglary (misdemeanor) | 07/02/2002: Consent Decree as to count 2 and placed on probation 04/24/2003: Probation violation 08/01/2003: Probation violation 09/16/2003: FTA[2] 03/11/2004: FTA 05/06/2004: Placed in state custody not to exceed 2 years |
| 06/26/2002 (Age 13) | Second Judicial District Juvenile Court; Albuquerque, NM; Docket No.: D-202-JR-2002-01029 | Ct. 1: Burglary Dwelling (felony) Ct. 2: Conspiracy Burglary (misdemeanor) Ct. 3: Conspiracy Larceny (misdemeanor) Ct. 4: Assault Battery School Employee (felony) Ct. 5: Disorderly Conduct (misdemeanor) | All charges dismissed |
| 08/05/2003 (Age 14) | Second Judicial District Juvenile Court; Albuquerque, NM; Docket No.: D-202-JR-2003-01285 | Unlawful Carrying a Deadly Weapon on School Grounds (felony) | 09/16/2003: FTA 05/06/2004: Dismissed |

---

[2]"FTA" stands for failure to appear.

| | | | |
|---|---|---|---|
| 02/22/2006 (Age 17) | Second Judicial District Juvenile Court; Albuquerque, NM; Docket No.: D-202-JR-2006- 00368 | Ct. 1: Receiving or Transferring a Stolen Motor Vehicle (felony) Ct. 2: No Driver's License (misdemeanor) | 06/27/2006: Admission as to count 1 and placed on probation 10/17/2006: Probation violation 05/02/2007: Dismissed |
| 11/27/2008 (Age 19) | Bernalillo County Metropolitan Court; Albuquerque, NM; Docket No.: T-4-DV-2008- 005161 | Inflicting Injury on Household Member (misdemeanor) | 12/11/2008: FTA 01/13/2009: Dismissed |
| 01/05/2009 (Age 19) | Second Judicial District Court; Albuquerque, NM; Docket No.: D-202-CR- 2009-05689 | Ct. 1: False imprisonment (felony) Cts. 2-3: Abandonment/Abuse of a Child (felony) Ct. 4: Unlawful Taking of a Motor Vehicle (felony) Ct. 5: Resisting/Evading an Officer (misdemeanor) Ct. 6: Battery Against a Household Member (misdemeanor) Ct. 7: Possession of Marijuana One Ounce or Less (misdemeanor) | 01/11/2010: FTA 02/07/2012: Failure to Comply 04/03/2012: Pled guilty and sentenced to 4 years and six months incarceration (suspended) with 4 years and 6 months probation imposed 12/06/2012: Probation violation 11/07/2013: Unsatisfactory Discharge from probation |
| 08/10/2009 (Age 20) | Second Judicial District Court; Albuquerque, NM; Docket No.: D-202-CR- 2009-04894 | Ct. 1: Abandonment or Abuse of a Child (felony) Ct. 2: Aggravated Assault With a Deadly Weapon (felony) | 03/12/2012: Dismissed |

| 10/03/2009 (Age 20) | Second Judicial District Court; Albuquerque, NM; Docket No.: D-202-CR- 2011-05278 | Ct. 1: Kidnapping (first degree) (felony) Cts.2-3: Aggravated battery (great bodily harm) (household member) (felony) Ct. 4: Abuse of a child - intentional (no death or great bodily harm) (felony) Ct. 5: Abuse of a child - negligently caused (no death or great bodily harm) (felony) Cts. 6-8: Battery (household member) (misdemeanor) Ct. 9: Interference with communications (misdemeanor) | 04/03/2012: Guilty as to counts 6 and 7 sentenced to 1 year probation 12/06/2012: Probation violation 11/07/2013: Unsatisfactory Discharge from probation |
|---|---|---|---|
| 10/29/2009 (Age 20) | Third Judicial District Court- Las Cruces, NM; Las Cruces, NM; Docket No.: D-307-CR- 2009-01180 | Ct. 1: Abandonment or Abuse of a Child (felony) Ct. 2: Tampering With Evidence (felony) Ct. 3: Conspiracy Tamper With Evidence (felony) | 07/26/2010: Sentenced to 3 years custody followed by 2 years parole |
| 03/20/2014 (Age 25) | Dona Ana Magistrate Court; Las Cruces, NM; Docket No.: M-14-MR-2014- 01038 | Ct. 1: Driving While License Suspended (misdemeanor) Ct. 2: Improper Display of Registration (misdemeanor) | Both charges dismissed |
| 5/11/2014 (Age 25) | Second Judicial District Court; Albuquerque, NM; Docket No.: D-202-CR- 2014-04985 | Ct. 1: Trafficking Controlled Substances (Possess with Intent to Distribute)(Narcotic or Meth)(1st Off.) (felony) Ct. 2: Conspiracy to Commit Trafficking (by Possession with Intent)(Narcotic or Meth) | 04/24/2015: FTA 09/10/2015: FTA 08/25/2016: Dismissed |

| | | | |
|---|---|---|---|
| | | (felony)<br>Ct. 3: Abuse of a Child (Does Not Result in Death or Great Bodily Harm) (1st Offense) (felony)<br>Ct. 4: Conspiracy to Commit Child Abuse - Negligently Cause (No Death or Great Bodily Harm) (felony)<br>Ct. 5: Dangerous Drugs, Conditions for Sale (felony)<br>Ct. 6: Conspiracy to Commit Dangerous Drugs, Conditions for Sale (felony)<br>Cts. 7-8: Possession of a Controlled Substance (Misdemeanor)<br>Cts. 9-10: Conspiracy to Commit Possession of a Controlled Substance (Felony - Narcotic Drug) Ct. 11: Use or Possession of Drug Paraphernalia (misdemeanor) | |
| | | | |
| 07/12/2014<br>(Age 25) | Las Cruces Magistrate Court; Las Cruces, NM;<br>Docket No.: M-14-MR-2014- 02221 | Ct. 1: Driving While License Suspended (misdemeanor)<br>Ct. 2: Expired registration of a motor vehicle (misdemeanor)<br>Ct. 3: No insurance (misdemeanor) | 09/04/2014: FTA[3]<br>01/23/2015: Dismissed |
| | | | |

---

[3]At his Arraignment and Detention Hearing, Valdez stated that he had not missed a court date since he got out of prison at age twenty-two. See Liberty at 46:17-47:05 (Valdez). The Court notes that Valdez' FTA on the motor vehicle charges stemmed from an arraignment on September 5, 2014, when Valdez was twenty-five. See State of New Mexico v. Jamie A. Valdez, M-14-MR-2014-0221.

| 07/17/2015 (Age 26) | Las Cruces Magistrate Court; Las Cruces, NM; Docket No.: M-14-VM-2015- 00522 | Battery Against a Household Member (misdemeanor) | 01/07/2016: Dismissed |
|---|---|---|---|
| | | | |
| 01/03/2017 (Age 27) | Second Judicial District Court; Albuquerque, NM; Docket No.: D-202-CR- 2017-00451 | Ct. 1: Armed Robbery (felony) Ct. 2: Aggravated Battery (Deadly Weapon) (felony) Ct. 3: Possession of a Firearm or Destructive Device by a Felon (felony) | 03/30/2017: Dismissed (state failed to provide discovery in a timely matter) |
| | | | |
| 04/05/2017 (Age 28) | Dona Ana Magistrate Court; Las Cruces, NM; Docket No.: M-14-MR-2017- 00717 | Driving While License Suspended (misdemeanor) | Dismissed |
| | | | |
| 06/27/2017 (Age 28) | Las Cruces Magistrate Court; Las Cruces, NM; Docket No.: M-14-MR-2017- 01215 | Cts. 1-4: Animal Population Control Violation (misdemeanor) Ct. 5: Animal Control Physical Restraints Violation (misdemeanor) Ct. 6: Animal Rabies Control and Vaccination Requirements Violation (misdemeanor) | 11/03/2017: All charges dismissed |
| | | | |

| 01/11/2019 (Age 29) | San Juan County Magistrate; Farmington, NM; Docket No.: M-147-FR- 2019-00024 | Ct. 1: Trafficking Controlled Substances (Possess with Intent to Distribute)(Narcotic or Meth)(1st Off.) (felony) Ct. 2: Possession of a Firearm or Destructive Device by a Felon (felony) Ct. 3: Tampering with Evidence (Highest Crime a Misdemeanor or Petty Misdemeanor) Ct. 4: Possession of Marijuana or Synthetic Cannabinoids (One Ounce or Less)(1st Offense) Ct. 5: Use or Possession of Drug Paraphernalia (misdemeanor) Ct. 6: Improper Display of Registration Plate (misdemeanor) Ct. 7: Tampering with Evidence (Highest Crime a Third, Fourth or Indeterminate Degree Felony) | 02/14/2019: Dismissed |
|---|---|---|---|
|  |  |  |  |
| 01/16/2019 (Age 30) | San Juan County Magistrate; Farmington, NM; Docket No.: M-147-FR- 2019-00039 | Trafficking Controlled Substances (Possess with Intent to Distribute)(Narcotic or Meth)(1st Off.)(felony) | Dismissed |
|  |  |  |  |

| | | | |
|---|---|---|---|
| 05/31/2019 (Age 30) | Bernalillo County Metropolitan Court; Albuquerque, NM; Docket No.: T-4-CR-2019- 003490 | Ct. 1: Reckless Driving (misdemeanor) Ct. 2: Failure to Yield Right of Way to Oncoming Vehicle (misdemeanor) Ct. 3: Unlawful Stopping, Standing or Parking by Opening Car Doors When Oncoming Traffic is Approaching (misdemeanor) Ct. 4: Failure to Keep Vehicle Within Traffic Lane (misdemeanor) Ct. 5: Unlawfully Allowing Vehicle to Slide or Lose Traction (misdemeanor) | 07/26/2019: All charges dismissed |
| 07/01/2019 (Age 30) | Second Judicial District Court; Albuquerque, NM; Docket No.: D-202-CR- 2019-02902 | Ct. 1: Aggravated Battery Against a Household Member (Strangulation or Suffocation) (felony) Ct. 2: Criminal Sexual Penetration in the Third Degree (felony) Ct. 3: False Imprisonment (felony) Cts. 4-5: Battery (household member) (misdemeanor) Ct. 6: Interference With Communications (misdemeanor) | 01/17/2020: Failed to Comply With Conditions of Release 01/27/2021: Failed to Comply 04/21/2021: Dismissed |
| 09/03/2019 (Age 30) | Bernalillo County Metropolitan Court; Albuquerque, NM; Docket No.: T-4-FR-2019- 005040 | Out of State Fugitive (felony) | 09/04/2019: Dismissed |
| | | | |

| | | | |
|---|---|---|---|
| 11/21/2019 (Age 30) | Third Judicial District Court; Las Cruces, NM; Las Cruces, NM; Docket No.: M-14-ER-2019- 00131 | Fugitive From Justice (felony) | Dismissed |
| 11/21/2019 (Age 30) | Las Cruces Magistrate Court; Las Cruces, NM; Docket No.: M-14-ER-2019- 00131 | Fugitive from Justice (felony) | Dismissed |
| 01/20/2020 (Age 31) | Second Judicial District Court; Albuquerque, NM; Docket No.: D-202-CR- 2020-00281 | Ct. 1: Kidnapping (Second Degree) (NO Intent to Commit Sex Offense)(felony) Ct. 2: Aggravated Battery (great bodily harm) (household member) (felony) Ct. 3: Possession of a Controlled Substance (felony) Ct. 4: Interference with Communications (misdemeanor) Ct. 5: Battery (household member) (misdemeanor) | 01/27/2021: Failed to Comply 05/04/2021: Dismissed |
| 01/31/2020 (Age 31) | Bernalillo County Metropolitan Court; Albuquerque, NM; Docket No.: T-4-FR-2020- 000545 | Out of State Fugitive (felony) | Dismissed |

Bail Report at 4-10.

17.     Valdez is in good physical health, and denies any mental health issues.  See Bail

Report at 2.

18.     Valdez has been on a medically supervised methadone regimen since approximately 2014.  See Bail Report at 2.

19.     Valdez testified that the death of his brother and being shot earlier this year affected his ability to comply with court orders:

> since my little brother died at the beginning of this year, I kind of fell off track and I did report to pretrial in the state, when my hand -- I got shot in the hand -- so, I mean, I was in a bad situation but really [had] no support, and no understanding of how this happened to my hand.

Liberty at 46:17-47:05 (Valdez).

## PROCEDURAL BACKGROUND

20.     Valdez was arrested on May 7, 2021, pursuant to an indictment charging him with:

a.     Possession With Intent to Distribute 50 Grams and More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A);

b.     Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and

c.     Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1) and [§] 924.

Indictment at 1-3; United States Pretrial Services' Memorandum at 1, filed October 22, 2021 (Doc. 33)("Memorandum").  Valdez pled Not Guilty to the charges at a hearing before Magistrate Judge Robbenhaar on May 12, 2021.  See Clerk's Minutes at 1, filed May 15, 2021 (Doc. 16).

21.     The Bail Report recommends that Valdez remain in custody pending trial.  See Bail Report at 3.  The Bail Report asserts that Valdez poses a risk of non-appearance, because of: (i) the pending charges' nature; (ii) Valdez' substance abuse history; (iii) Valdez' criminal history and record of failure to appear; (iv) Valdez' lack of verifiable, legitimate employment; and

(v) Valdez' record of non-compliance with conditions of pretrial release, probation, and parole. See Bail Report at 2.

22.     Additionally, the Bail Report asserts that Valdez poses a risk of danger to the community, because of: (i) the nature of the federal offense for which he is being prosecuted; (ii) Valdez' prior arrests and convictions; (iii) Valdez' substance abuse history; (iv) Valdez' violent behavior history; (v) Valdez' record of non-compliance with conditions of pretrial release, probation, and parole; (vi) Valdez' criminal history while under supervision; (vii) Valdez' history or charge involving domestic violence; (viii) Valdez' history of weapons use; (ix) Valdez' pattern of similar criminal activity; and (x) safety concerns for the community or a specific individual. See Bail Report at 3.

### 1.     The Arraignment and Detention Hearing.

23.     On May 12, 2021, at Valdez' arraignment and detention hearing, Magistrate Judge Robbenhaar ordered that the United States detain Valdez pending trial.  See Detention Order at 3; Clerk's Minutes at 1.  Magistrate Judge Robbenhaar heard from Valdez, who requested to be released to La Pasada Halfway House.  See Liberty at 37:40-38:00 (Fooks).  Valdez stated that he has a number of skills

> that would make him amenable to employment, he can do concrete work, asphalt work, he's done construction in the past, he's also done landscaping, and he's informed me that there are least three different avenues for him to gain employment, should your honor choose to release him.  One is at Tumbleweed Landscaping, another is at a tire store on Isleta Boulevard, and also Valdez's girlfriend's family is heavily involved in the construction industry and could also provide inroads to employment there as well.

Liberty at 38:15-39:10 (Fooks).  Valdez argued that he has not had any convictions since 2009 and that none of his convictions are for crimes of violence; he also argued that placement at La Pasada Halfway House, and GPS or electronic monitoring, would provide the necessary conditions for

release.  See  Liberty at 39:15-40:00 (Fooks).  Valdez stated that release to La Pasada would allow

him to continue methadone treatment, see Liberty at 40:10-20 (Fooks), but that he would like to

go to La Pasada even if he could not continue that treatment there, see Liberty at 20-59 (Fooks).

Magistrate Judge Robbenhaar noted that he heard that La Pasada currently does not allow

methadone treatment and La Pasada does not have the capability to transport residents at this time.

See Liberty at 41:00-41:55 (Magistrate Court, Probation).  Magistrate Judge Robbenhaar noted

> a number of entries on the criminal history of the report, but as Mr. Fooks noted,
> really there's been no convictions since the 2009 case . . . so we're talking a decade
> of no convictions, and yet . . .  on the other hand in that ten years . . . [there are]
> eleven charges, many of which are felonies . . . serious felonies . . .trafficking cases,
> aggravated batteries, armed robberies, these have all been dismissed.  But there
> were charges, indicating that there was some involvement in criminal activity.  I do
> find that at this point, I'm not comfortable in releasing Mr. Valdez . . .

Liberty at 44:14-45:40 (Magistrate Court).  Magistrate Judge Robbenhaar continued: "I might say,

Mr. Fooks, if you can get a program or something, it looks to me that Mr. Valdez would benefit

from . . . an inpatient program, I'd consider it . . . but at this point I'm not comfortable releasing

him."  Liberty at 45:41-46:15 (Magistrate Court).  Next, Valdez spoke on his own behalf, stating

> I've never missed a court date ever since I got out of prison, ever since I
> was twenty, twenty-two years old, I never missed a court date,[4] always complied,
> but since my little brother died at the beginning of this year, I kind of fell off track
> and I did report to pretrial in the state, when my hand -- I got shot in the hand -- so,
> I mean, I was in a bad situation but really [had] no support, and no understanding
> of how this happened to my hand.  As far as staying away from the people that did
> this to my hand, I did do that.  So I mean, honestly, I will comply with my rules or
> probation, and I will be fine with [an] ankle bracelet, I've already done this, and I
> did not violate, sir.

Liberty at 46:17-47:05 (Valdez).  Magistrate Judge Robbenhaar thanked Valdez and suggested

that Valdez consult with his attorney to see if they could "come up with a plan," indicating that

---

[4]According to the Bail Report, Valdez' last FTA was in 2014, when Valdez was twenty-
five years old.  See Bail Report at 7.

Magistrate Judge Robbenhaar might reconsider his ruling in the future.  Liberty at 47:06-21 (Magistrate Court).  Despite Valdez' arguments, Magistrate Judge Robbenhaar determined that  he did not have sufficient evidence to suggest that any conditions or combinations of conditions would ensure Valdez' appearance or the community's safety.  See Liberty at 47:21-30 (Magistrate Court).

24.     Magistrate Judge Robbenhaar determined that a rebuttable presumption arises under 18 U.S.C. § 3142(e)(3) that "no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe" that Valdez committed an offense under the Controlled Substances Act, 21 U.S.C. §§ 801-904, for which a maximum term of imprisonment is ten years, and an offense under 18 U.S.C. § 924(c).  Detention Order at 2.  Magistrate Judge Robbenhaar ordered that Valdez be detained, because he concluded that the "defendant has not introduced sufficient evidence to rebut the presumption."  Detention Order at 2.  Magistrate Judge Robbenhaar gave the following reasons for his decision to detain Valdez pending trial:

> d.      Valdez would be "[s]ubject to [a] lengthy period of incarceration if convicted";
>
> e.      Valdez has a "[p]rior criminal history";
>
> f.      Valdez has a "[h]istory of violence or use of weapons"; and
>
> g.      Valdez has a "[l]ack of stable employment."

Detention Order at 2.

**2.      The Appeal.**

25.     Valdez appeals his pretrial detention.  See Appeal at 1.  Valdez argues that he is "not a danger to the community and is not a flight risk."  Appeal at 2.  First, Valdez argues that the

criminal history detailed in the Bail Report is misleading, because "the vast majority of Mr. Valdez' charges have been dismissed for one reason or another," and only three of the twenty-one charges brought against Valdez as an adult resulted in convictions.  Appeal at 2.  Valdez asserts that none of the three convictions are considered crimes of violence.  See Appeal at 2.  Valdez argues that the last conviction he has is from October 29, 2009, and all charges since then have been dismissed.  See Appeal at 2.  Valdez urges the Court not to consider arrests that have not resulted in a conviction in evaluating whether he is a danger to the community.  See Appeal at 3.

26.    Next, Valdez argues that, even though his history shows "a number of failures to appear and failures to comply with conditions of release or probation," he is not a flight risk, because there are "conditions that can minimize the concerns" that the Court may have about Valdez' "ability to comply with a court's release order."  Appeal at 3.  Valdez argues that he does not have any assets or employment, and so his ability to travel is necessarily limited.  See Appeal at 3.  Valdez suggests that the Court release him from custody with GPS monitoring and order substance abuse training, and that placement at La Pasada Halfway House would be effective in his case.  See Appeal at 3-4.

3.    **The Response**.

27.    The United States responded to the Appeal Motion on September 16, 2021.  See United States' Sealed Response to Defendant's Appeal of Detention Order at 1, filed September 16, 2021 (Doc. 23)("Response").  The United States alleges that Bernalillo County Sheriff's deputies arrested Valdez on February 20, 2021, on four "pending felony warrants," including "Failure to Comply with Pretrial Services" and "Fugitive Complaints requesting extradition to Colorado for the crime of Dangerous Drugs."  Response ¶ 1, at 1.  See Response at 3.  The United States contends that the underlying charges in State court are for "Aggravated Battery Against a

Household Member (Strangulation or Suffocation) and Criminal Sexual Penetration in the Third

Degree." Response ¶ 1, at 2. The United States argues that Valdez has convictions for "False

Imprisonment (felony) and Battery Against a Household Member (misdemeanor)" from 2012, and

"a felony conviction for Child Abuse (Negligently Caused)(No Death or Great Bodily Harm)"

from 2010. Response at 2-3. At the time of the incident in this case, the United States notes that

Valdez had "four felony warrants . . . two for violent domestic violence cases and two for drug

cases in Colorado." Response at 3.

       28. The United States argues that Valdez' dismissed charges should be taken into

account, including "a trafficking and felon in possession of a firearm case," which was dismissed

"because the officer did not sign the affidavit," an "Armed Robbery, Aggravated Battery, and

Felon in Possession of a Firearm case . . . (dismissed for violation of Rule LR2-400),"[5] and "a

2011 case for Kidnapping, Aggravated Battery Against a Household Member, and Child Abuse

. . . ." Response at 3. The United States notes that Valdez' Bail Report lists "five probation

violations, seven failures to appear, and four failures to comply." Response at 3-4. The United

States argues that, under the Bail Reform Act, 18 U.S.C. §§ 3141-3156, there is a presumption that

"no condition or combination of conditions will reasonably assure the appearance of a defendant

and the safety of the community," and that this presumption applies to Valdez' charges. Response

at 4 (citing 18 U.S.C. § 3142(e)(3)(A)). Response at 5. The United States argues that, once that

---

[5]Local Rule 2-400 of the Second Judicial District Court for the State of New Mexico, LR2-400 NMRA, was recompiled and amended as LR2-308 NMRA, effective December 31, 2016. LR2-308 NMRA is entitled, "Case management pilot program for criminal cases," and provides rules for, among other things, the deadlines for a defendant's arraignment and trial, the certification process by the prosecution, the scope of the state's discovery disclosure requirements, and witness list disclosure requirements. The United States does not specify which subsection of LR2-308 was at issue in the charge's dismissal.

presumption is invoked, "the burden of production shifts to the defendant."  Response at 4 (citing United States v. Stricklin, 932 F. 2d 1353, 1354 (10th Cir. 1991)).

29.    The United States counters Valdez' assertion that his criminal history is "'not as nefarious as it appears at first glance,'" Response at 5 (quoting Appeal Motion at 2), by stating that Valdez' history is even worse, and "shows a pattern of domestic violence . . . [in which] a victim fails to cooperate, a phenomenon all too common in domestic violence cases in which the case relies upon the testimony of someone with whom the defendant has a continuing personal relationship."  Response at 5.  The United States argues that, even without the felony and misdemeanor convictions, Valdez' "sheer volume of criminal cases and arrests" justify "a finding that no condition or combination of conditions will reasonably assure [Valdez'] appearance and safety of any other person and the community."  Response at 5.

30.    The United States contends that, even if Valdez rebuts the presumption, the § 3142(g) factors weigh against him.  See Response at 6.  In terms of the first factor, "nature and circumstances of the offense charged," 18 U.S.C. § 3142(g)(1), the United States notes that Valdez is charged with "both a controlled substance offense, A-level methamphetamine possession with intent to distribute, and a firearms offense."  Response at 6.  The United States asserts that "[t]he weight of the evidence is strong" against Valdez, Response at 6 (citing 18 U.S.C. § 3142(g)(2)), and that Valdez' history and characteristics "show a disturbing pattern of violence and manipulation," and a "pattern of trafficking."  Response at 7 (citing 18 U.S.C. § 3142(g)(3)).

31.    The United States contends that Valdez is a flight risk, because he frequently travels to Mexico without a passport and is "facing a 15-year statutory minimum on the charges in this case."  Response at 7.  Countering Valdez' suggestion of GPS monitoring and placement at La Pasada, the United States contends that Valdez would be able to cut off the monitor and flee the

jurisdiction.  See Response at 7.  Regarding the "Nature and Seriousness of Danger to Persons or Community," the United States emphasizes Valdez' criminal history, and expresses concern about the danger he poses to the community, and, in particular, to children and household members. Response at 7 (citing 18 U.S.C. § 3142(g)(4)).  The United States urges the Court to deny Valdez' Appeal.  See Response at 8.

4.  **The Appeal Hearing**.

32.      At the Appeal Hearing, the Court first asked Mr. Devon Fooks, Valdez' defense counsel, to speak on Valdez' behalf in support of his appeal.  See Transcript of Hearing at 2:20-22 (taken October 25, 2021)(Court)("Tr.").[6]  Valdez argued that, out of his six convictions as an adult,

> five of them arise from two incidents that he pled guilty to at the same time
> . . . . four of those convictions are for misdemeanor battery to crimes that would not
> be considered legally crimes of violence for purposes of [the Armed Career
> Criminal Act, 18 U.S.C. § 924(e)(1)] or for purposes of career offender, but they
> . . . are almost a decade old . . . .

Tr. at 4:11-18 (Fooks).  Valdez argued that, in the decade since those convictions, all of the charges from his numerous arrests were dismissed, see Tr. at 4:23-5:2 (Fooks), and that there was no "hard evidence . . . at least in the Pretrial Services Report," that charges were dismissed because the victim did not "show up," Tr. at 5:4-9 (Fooks).

33.      While acknowledging some failures to appear before 2015, and failures to comply during and since July, 2019, Valdez pointed to a lack of failures to appear and failures to comply in his criminal history between 2015 and June 2019.  See Tr. at 6:9-7:14 (Fooks).  Valdez requested that he be released to a halfway house "to overcome some of these compliance issues."  Tr. 7:19-

---

[6]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

21 (Fooks).  Valdez admitted previous struggles with substance abuse, but noted that he "was taking part in a methadone program" prior to his arrest, and is "off drugs now."  Tr. at 7:25-8:5 (Fooks).

34.     Valdez argued that the "chore in terms of whether or not he's going to comply with the conditions of his release and whether or not he's going to pose a danger to the community, . . . is to make sure that he is . . . sober," and that placement at La Pasada halfway house would "require him to go through an assessment [for] drug or alcohol issues," and undergo "appropriate treatment."  Tr. at 8:7-18 (Fooks).  If he can stay sober, Valdez argued, "the chances of him becoming a danger are substantially reduced," and the "chances of him complying with . . . orders . . . similarly go up."  Tr. at 9:1-4 (Fooks).  Valdez stated that "he does have skills which make him employable, he has worked previously in landscaping as well as in [a] tire shop . . . and "has an in, so to speak[,] in working construction."  Tr. at 9:7-12 (Fooks).

35.     The Court next called the United States to argue for its Response.  See Tr. at 18:18-20 (Court).  The United States responded by stating that "Mr. Valdez' criminal history is even worse than it appears at first glance," because the "sheer volume" of cases involving Valdez "is astounding, and it exhibits a pattern of domestic violence cases and trafficking cases."  Tr. at 10:5-13 (Wilson).  The United States indicated that Valdez' criminal history shows seventeen "probation violations, failures to appear and failures to comply," "many of which are on felony cases."  Tr. at 10:25-11:3 (Wilson).  The United States reiterated its position that Valdez is a flight risk, see Tr. at 11:4-5 (Wilson), and emphasized that Valdez "had two violent cases pending in the Second Judicial District Court" at the time he was arrested on the current charges, but "had not appeared for pretrial services in those cases despite being ordered to,"  Tr. at 11:6-12 (Wilson).  The United States notes that Valdez is facing a longer sentence in this "A level methamphetamine

case with a 924(c)" than in his previous cases, Tr. at 11:21-23 (Wilson), and the fact that he had 860 grams of methamphetamine makes him a danger to the community, see Tr. at 11:24-12:2 (Wilson).  Furthermore, the United States argued, "he had a firearm on his person[,] [a]nd when officers asked if he had a weapon, he told them no, even though he had a firearm sitting right there in his pocket."  Tr. at 12:2-5 (Wilson).

36.     The United States expressed concern about Valdez' "ability to travel to Mexico" without a passport, which is "another indication of flight risk."  Tr. at 12:9-15 (Wilson).  The United States argued that Valdez has not rebutted the presumption of pretrial detention in this case, and that it has "shown by a preponderance of evidence that he is a flight risk and by clear-and-convincing [evidence] that he's a danger to the community."  Tr. at 12:17-25 (Wilson).  The Court next called Anthony Galaz, the Pretrial Services Officer in this case, see Tr. at 13:3-6 (Court), who agreed that detention is appropriate, because Valdez is both a flight risk and a danger to the community, see Tr. at 13:5-13 (Court, Galaz).  Finally, Valdez argued that, although there is a presumption of him being a flight risk and a danger to the community, there "is a condition or combination of conditions that can be put into place to address those concerns."  Tr. at 14:2-4 (Fooks).  See id. at 13:22-14:1 (Fooks).

37.     Valdez argued that his drug use was the main issue and so "drug treatment would go a long way," Tr. at 14:11-12 (Fooks), and that GPS monitoring could address concerns about being a flight risk, see Tr. at 14:15-16 (Fooks).  Valdez urged the Court not to "read[] too much into cases that have been dismissed that we don't know what happened," Tr. at 15:9-11 (Fooks), and stated that the majority of Valdez' seventeen failures to comply or appear occurred before 2009, see Tr. at 15:17-21 (Fooks).  The Court then asked Valdez whether he pled guilty to all seven of the counts from 2009, at age nineteen, see Tr. at 16:4-7 (Court); id. at 16:18-19 (Court), and

Valdez replied that he had pled to counts one through six, see Tr. at 16:8-17 (Fooks); id. at 16:20-21 (Fooks).

38.     The Court indicated that it was "slow to find by clear-and-convincing evidence that [Valdez] is a danger to the community for arrests and no conviction[,]" but "I do think that the convictions that he does have, some of which are at a young age, like the conspiracy burglary and then those incidents in 2009 of false imprisonment and battery against a household member" are "sufficient to find by clear-and-convincing evidence that he is a danger to the community when I add to that the number of other instances and charges that he has . . . ." Tr. at 17:3-11 (Court). The Court added it can make a solid finding with the four convictions that Valdez has, added to the "quite significant" "volume of [Valdez'] criminal history," Tr. at 17:11-16 (Court), and that "the domestic violence cases concern the court," Tr. at 17:18-19 (Court).  Given that the "charges are serious," and given "the combination of volume, combination of convictions and the character of those convictions," the Court found by clear-and-convincing evidence that Valdez was a danger to the community.  Tr. at 17:21-24 (Court).

39.     The Court also concluded that the United States has shown by a preponderance of evidence that Valdez is a flight risk, given his failures to comply, failures to appear, and frequent visits to Mexico apparently without a passport.  See Tr. at 17:24-18:4 (Court).  The Court next weighed whether there were any conditions that would mitigate those risks to "an acceptable level," Tr. at 18:8-9 (Court), and concluded that Valdez would not be successful at a halfway house and likely would leave it -- even with GPS monitoring in place, see Tr. at 18:12-20 (Court).  The Court expressed concern about the charges of "resisting and evading an officer," because the Court does not want to put the United States Marshals in danger, should Valdez leave the halfway house.

Tr. at 18:24-25 (Court).  See id. at 19:1-3 (Court).  The Court concluded by denying Valdez'

appeal, and ordered that Valdez remain in custody pending trial.  See Tr. at 19:9-10 (Court).

## LAW REGARDING PRETRIAL DETENTION

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3150, a court may detain a

defendant pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a

finding "that no condition or combination of conditions will reasonably assure the appearance of

the person as required and the safety of any other person and the community,"  18 U.S.C.

§ 3142(e).  At such a hearing, "the facts the judicial officer uses to support a finding pursuant to

subsection (e) that no condition or combination of conditions will reasonably assure the safety of

any other person and the community shall be supported by clear and convincing evidence."  18

U.S.C. § 3142(f).  The government bears the burden of proving that the defendant is a flight risk

by a preponderance of the evidence.  See United States v. Cisneros, 328 F.3d 610, 616 (10th Cir.

2003)(citing United States v. Xulam, 84 F.3d 441, 442 (D.C. Cir. 1996)(per curiam); United States

v. Quartermaine, 913 F.2d 910, 917 (11th Cir. 1990)).  "The rules concerning the admissibility of

evidence in criminal trials do not apply to the presentation and consideration of information at the

[detention] hearing."  18 U.S.C. § 3142(f)(2)(alteration added).  See United States v. Hernandez,

778 F. Supp. 2d 1211, 1219-28 (D.N.M. 2011)(Browning, J.)(holding that the Confrontation

Clause does not apply to the defendant's pre-trial decision hearing).

When a defendant is charged with certain crimes, however, a presumption arises that the

defendant is a flight risk and a danger to the community.  See 18 U.S.C. § 3142(e)(3); United

States v. Villapudua-Quintero, 308 F. App'x 272, 273 (10th Cir. 2009)(unpublished)[7](per

---

[7]United States v. Villapudua-Quintero is an unpublished Tenth Circuit opinion, but the
Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is

curiam)(recognizing that 18 U.S.C. § 3142(e) establishes a rebuttable presumption favoring detention for, among other defendants, certain alleged drug offenders).  18 U.S.C. § 3142(e)(3)(A) provides that a presumption of detention arises when "there is probable cause to believe that the person committed" certain drug offenses, specifically "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46."  18 U.S.C. § 3142(e)(3)(A).  The United States Court of Appeals for the Tenth Circuit has explained that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more."  United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993).  Accord United States v. Holguin, 791 F. Supp. 2d 1082, 1088 (D.N.M. 2011)(Browning, J.).  "'Once the presumption is invoked, the burden of production shifts to the defendant.'"  United States v. Holguin, 791 F. Supp. 2d at 1087 (quoting United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991)).

The burden of production requires the defendant to produce some evidence in the face of § 3142(e)(3)'s presumption.  See United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991)("The defendant's burden of production is not heavy, but some evidence must be

---

persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Villapudua-Quintero, 308 F. App'x 272 (10th Cir. 2009), and United States v. Vorrice, 277 F. App'x 762 (10th Cir. 2008), have persuasive value with respect to a material issue and will assist the Court in its preparation of this Memorandum Opinion and Order.

produced.").  The defendant's testimony on the record producing something new -- or even a proffer of some new evidence -- may be sufficient to meet the defendant's burden of production. On the other hand, if defense counsel brings nothing new to the table, but merely argues for release based on bail reports or other existing government documentation already in the record, such argument alone is insufficient to meet the defendant's burden of production.   "Should the defendant satisfy his or her burden of production under 18 U.S.C. § 3142(f), the United States must then show by a preponderance of the evidence that the defendant presents a risk of flight, or by clear-and-convincing evidence that the defendant presents a danger to the community." United States v. Holguin, 791 F. Supp. 2d at 1087 (citing United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Stricklin, 932 F.2d at 1354-55 ("[T]he burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.")). Even if the defendant meets his or her burden of production under 18 U.S.C. § 3142(f), "the presumption remains a factor for consideration by the district court in determining whether to release or detain." United States v. Stricklin, 932 F.2d at 1355.  Accord United States v. Mercedes, 254 F.3d at 436; United States v. Ramos, No. CR 15-3940 JB, 2016 WL 9021831, at *13-14 (D.N.M. Dec. 30, 2016)(Browning, J.).  In determining whether there are conditions of release that will reasonably assure the defendant's appearance and the community's safety, the court must consider: (i) the nature and circumstances of the crime charged; (ii) the weight of the evidence against the defendant; (iii) the defendant's history and characteristics, including family ties, employment, financial resources, community ties, drug or alcohol abuse history, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual that release would pose.  See 18 U.S.C. § 3142(g).

**LAW REGARDING THE DISTRICT COURT'S REVIEW OF A MAGISTRATE
JUDGE'S DETENTION ORDER OR RELEASE ORDER UNDER
<u>18 U.S.C. § 3145(A)-(B)</u>**

Section 3145(a)-(b) of Title 18 of the United States Code provides that a "court having

original jurisdiction over the offense" may review a Magistrate Judge's detention order or release

order.  18 U.S.C. § 3145(a).  <u>See</u> 18 U.S.C § 3145(b).  "The standard of review for the district

court's review of a Magistrate Judge's detention or release order under § 3145(a) is de novo."

<u>United States v. Cisneros</u>, 328 F.3d at 616 n.1.  "When the district court acts on a motion to revoke

or amend a magistrate's pretrial detention order, the district court acts de novo and must make an

independent determination of the proper pretrial detention or conditions for release."  <u>United States</u>

<u>v. Rueben</u>, 974 F.2d 580, 585-86 (5th Cir. 1992).  <u>See</u> <u>United States v. Maull</u>, 773 F.2d 1479, 1481

(8th Cir. 1985)(stating that a district court's review of a Magistrate Judge's order setting bond is

de novo); <u>United States v. Hernandez</u>, No. CR 18-0201 JB\KK, 2018 WL 6050635, at \*17 (D.N.M.

Nov. 19, 2018)(Browning, J.)("Conducting a de novo review, the Court agrees with [the

Magistrate Judge] that, although [the defendant] need be only either a flight risk or a danger to the

community, [the defendant] is both a flight risk and a danger to the community."); <u>United States</u>

<u>v. Castanon-Perez</u>, 347 F. Supp. 3d 661, 667 (D.N.M. 2018)(Browning, J.)("Conducting a de novo

review, the Court agrees with the United States that [the defendant] is a flight risk and that there

is no combination of release conditions that would ensure her appearance.").

**<u>LAW REGARDING CRIMES OF VIOLENCE UNDER THE BAIL REFORM ACT</u>**

Under the § 3142(g)'s first factor, the Court must examine the nature and circumstances of

the offense charged, including whether it involved a crime of violence.  For the purposes of a

pretrial detention hearing or appeal, the Court defines a "'crime of violence' under 18 U.S.C. §

3156(a)(4)(B)" -- the Bail Reform Act -- and not under the Armed Career Criminal Act, 18 U.S.C.

§ 924(e)(1)("ACCA"), which defines violent felonies for the purpose of sentencing.  United States

v. Vencomo-Reyes, No. CR 11-2563 JB, 2011 U.S. Dist. LEXIS 138823, at *25 & n.5 (D.N.M.

Nov. 28, 2011)(Browning, J.)(quoting 18 U.S.C. § 3156(a)(4)).   Section 3156(a)(4) defines a

"crime of violence" as:

> (A)      an offense that has an element of the offense the use, attempted use, or
> threatened use of physical force against the person or property of another;
>
> (B)      any other offense that is a felony and that, by its nature, involves a
> substantial risk that physical force against the person or property of another may be
> used in the court of committing the offense; or
>
> (C)      any felony under chapter 77, 109A, 110, or 117; . . .

18 U.S.C. § 3156(a)(4).   In United States v. Ingle, 454 F.3d 1082 (10th Cir. 2006), the Tenth

Circuit concluded that an offense under 18 U.S.C. § 922(g)(1) -- being a Felon in Possession of a

Firearm -- is not a crime of violence under 18 U.S.C. § 3156(a)(4)(B) of the Bail Reform Act.

See 454 F.3d at 1986.[8]   In reaching that result, the Tenth Circuit noted that: (i) its decision was in

line with the majority of circuits; (ii) "ex-felons have the same motives as lawful possessors to

possess a firearm -- self-defense, hunting, gun-collecting, and target practice"; and (iii) "the mere

---

[8]Although the Supreme Court of the United States discussed the phrase "violent felony" in
Begay v. United States, 553 U.S. 137 (2008), and described its categorical approach to analyzing
that language, those cases addressed the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1).
Begay v. United States, 553 U.S. at 139 (analyzing whether driving under the influence is a
"violent felony" under the Armed Career Criminal Act).   See James v. United States, 550 U.S.
192, 195 (2007)(analyzing whether attempted burglary, as Florida law defines that word, is a
"violent felony" under the Armed Career Criminal Act).   Furthermore, after the Supreme Court
decided those cases, the Tenth Circuit has continued to cite United States v. Ingle and the cases
leading up to that decision as good law.   See United States v. Serafin, 562 F.3d 1105, 1110, 1111
n.6 (2009) (citing United States v. Rogers, 371 F.3d at 1228; United States v. Ingle, 454 F.3d at
1085-86); United States v. Vorrice, 277 F. App'x 762, 763 n.1 (10th Cir. 2008)(unpublished)("The
district court erred in characterizing firearm possession as a crime of violence under § 3142(e) and
(f)(1)(A).")(citing United States v. Ingle, 454 F.3d at 1086).

possession of a firearm by a convicted felon does not create a substantial risk that physical force will be used against the property or person of another." United States v. Ingle, 454 F.3d at 1086 (quoting United States v. Rogers, 371 F.3d 1225, 1227 (10th Cir. 2004); United States v. Lane, 252 F.3d 905, 906 (7th Cir. 2001)).  The Tenth Circuit applies a categorical approach to identify a crime of violence as defined in § 3156(a)(4).  See United States v. Ingle, 454 F.3d at 1084-85.  The Court has noted that the Tenth Circuit distinguished § 922(g)(1) from other provisions of § 922 which the Tenth Circuit has found to be crimes of violence, because the "risk posed [under § 922(g)(1)] is not necessarily substantial" whereas "§ 922(g)(8) and (9) proscribe conduct 'necessarily involv[ing] actual violence or credible threats of violence.'" United States v. Perea, No. CR 09-1034, 2010 WL 2292419, at *11 (D.N.M. May 24, 2010)(Browning, J.)(quoting United States v. Ingle, 454 F.3d at 1230-31).[9]  In United States v. Ingle, the Tenth Circuit does not engage in an in-depth analysis of the differences between § 922(g)(1) and § 922(g)(8)-(9).  See 454 F.3d at 1085-86.  The Tenth Circuit cites, however, its decision in United States v. Rogers, which concluded that § 922(g)(8)-(9) were crimes of violence.  See United States v. Ingle, 454 F.3d at 1086 (citing United States v. Rogers, 371 F.3d at 1229).   In United States v. Rogers, the Tenth Circuit distinguished § 922(g)(1) cases from other United States Court of Appeals, because those

---

[9]18 U.S.C. § 922(g)(8) prohibits anyone who is subject to a domestic violence protection order from possessing a firearm, provided that the court order: (i) was issued after a hearing where the person had an opportunity to participate; (ii) restrains such person from harassing, stalking, or threatening an intimate partner or child of such intimate partner or person; and (iii) includes a finding that such person represents a credible threat or by its terms explicitly prohibits the use, attempted use, or threatened use of force against such intimate party or child.  See 18 U.S.C. § 922(g)(8).  18 U.S.C. § 922(g)(9) prohibits any individual who has been convicted in any court of a misdemeanor crime of domestic violence from possessing a firearm.  See 18 U.S.C. § 922(g)(9). In United States v. Rogers, the Tenth Circuit determined that violations of 18 U.S.C. § 922(g)(8) and (9) were crimes of violence.  See 371 F.3d at 1228.  See also United States v. Perea, 2010 WL 2292419, at *7.

courts held that, "although there might be <u>some</u> increased chance of violence flowing from the possession of a weapon by a felon, that risk could simply not be classified as substantial" and by contrast persons charged under § 922(g)(8)-(9) "necessarily involve actual violence or credible threats of violence."  371 F.3d at 1229-30 (emphasis in original)(citing <u>United States v. Lane</u>, 252 F.3d 905, 906-07 (7th Cir. 2001); <u>United States v. Singleton</u>, 182 F.3d 7, 14-15 (D.C. Cir. 1999)). Thus, in <u>United States v. Ingle</u>, the Tenth Circuit adopted the reasoning of the cases that it distinguished in <u>United States v. Rogers</u>.  <u>See United States v. Ingle</u>, 454 F.3d at 1086.

Under 18 U.S.C. § 3156(a)(4)(B), the term "crime of violence" means "an offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 3156(a)(4)(B).  <u>See also United States v. Ingle</u>, 454 F.3d at 1085.  Following the <u>United States v. Ingle</u>'s rationale, the Court concludes that § 922(g)(5) is not a crime of violence.  Like § 922(g)(1), an offense under § 922(g)(5) is "unquestionably a felony" presenting "<u>some</u> risk of physical force being used against another."  <u>United States v. Ingle</u>, 454 F.3d at 1085 (citing <u>United States v. Rogers</u>, 371 F.3d at 1229)(emphasis in <u>United States v. Ingle</u>).  Furthermore, because undocumented aliens, like ex-felons, can "have the same motives as lawful possessors of firearms to possess firearms," an alien-in-possession offense under § 922(g)(5) likewise is not "inherently a crime of violence."  <u>United States v. Ingle</u>, 454 F.3d at 1086.  Finally, "the mere possession of a firearm" by an undocumented alien does not create a "<u>substantial</u> risk that physical force will be used against the property or person of another," because undocumented aliens enter the United States illegally for a wide variety of reasons -- economic, family, or more nefarious purposes -- just as large numbers of felonies involve "economic, regulatory, or other crimes that do not entail physical violence at all."  <u>United States v. Ingle</u>, 454 F.3d at 1086 (citations omitted)(emphasis

added).   Because an offense under § 922(g)(5) does not "proscribe conduct 'necessarily involv[ing] actual violence or credible threats of violence," it more closely resembles § 922(g)(1), which the Tenth Circuit has determined is not a crime of violence, than § 922(g)(8) and (9), which the Tenth Circuit concludes are crimes of violence.  United States v. Perea, 2010 WL 2292319, at *11 (alteration in original).

## ANALYSIS

The United States charged Valdez with offenses that trigger the rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" if the court "finds that there is probable cause to believe that the person committed" them.  18 U.S.C. § 3142(e)(3).  In pertinent part, offenses that trigger the presumption are:

> (A)    an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46 . . . ;[or]

> (B)    an offense under section 924(c), 956(a), or 2332b of this title . . . .;

18 U.S.C. § 3142(e)(3).  The Tenth Circuit explains that "[t]he grand jury indictment is sufficient to establish the finding of probable cause that defendant committed a federal drug offense with a maximum prison term of ten years or more."  United States v. Silva, 7 F.3d 1046, 1046 (10th Cir. 1993).  The Court concludes that there is probable cause to believe that Valdez committed the crimes of

> Possession With Intent to Distribute 50 Grams and More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1) and § 924.

Indictment at 1-3.  <u>See</u> Memorandum at 1.  The Court concludes, therefore, that the rebuttable

presumption in § 3142(e)(3) applies, and that Valdez meets his burden of production by producing

some evidence.  Despite this production, the burden of persuasion remains always on the United

States, and the United States meets its burden here.  The Court  concludes, therefore, that: (i)

although Valdez meets his burden of production under § 3142(e)(3); (ii) the United States meets

its burden to show, by clear-and-convincing evidence, that there is no condition or combination of

conditions which reasonably will assure the safety of any other person and the community; and

(iii) the United States meets its burden of showing, by a preponderance of evidence, that no

condition or combination of conditions of release reasonably will assure Valdez' appearance.  The

Court therefore will deny Valdez' appeal.

## I.      <u>VALDEZ MEETS HIS BURDEN OF PRODUCTION</u>.

In reviewing de novo Magistrate Judge Robbenhaar's decision to detain Valdez pending

trial, and in conducting a hearing on Valdez' appeal, the Court concludes that Valdez meets his

burden of production in the face of § 3142(e)(3)'s rebuttable presumption.  The Court listened to

the audio recording of Valdez' May 12, 2021, arraignment and detention hearing before Magistrate

Judge Robbenhaar, and notes that Valdez' defense counsel offered additional information about

Valdez' work skills and employment prospects beyond what the Bail Report states.  <u>See</u> Liberty

at 38:15-39:10 (Fooks); Bail Report at 2.  Valdez stated that

> he can do concrete work, asphalt work, he's done construction in the past, he's also
> done landscaping, and he's informed me that there are least three different avenues
> for him to gain employment, should your honor choose to release him. One is at
> Tumbleweed Landscaping, another is at a tire store on Isleta Boulevard, and also
> Valdez's girlfriend's family is heavily involved in the construction industry and
> could also provide inroads to employment there as well.

Liberty at 38:15-39:10 (Fooks).  The Arraignment and Detention Hearing gave greater detail and provided more information than did the Bail Report on this topic, which states that "the defendant reported he is unemployed and dependent on family members for financial support.  He reported working briefly in early 2020 as a laborer in Durango, Colorado . . . but indicated losing work due to the coronavirus pandemic."  Bail Report at 2.  Additionally, Valdez' statements added that the loss of his younger brother and a bullet injury to his hand prompted his recent failures to comply with probation.  See Liberty at 46:17-47:05 (Valdez).  Valdez testified that he had no support during that time, but that he is staying away from the people who shot him, and also that he is willing to comply with conditions of release, such as wearing GPS monitoring.  See Liberty at 46:17-47:05 (Valdez).

The burden of production requires the defendant to produce some evidence in the face of § 3142(e)(3)'s presumption.  See United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991)("The defendant's burden of production is not heavy, but some evidence must be produced.").  The defendant's testimony on the record producing something new -- or even a proffer of some new evidence -- may be sufficient to meet the defendant's burden of production.  Here, Valdez offered additional information about his employment prospects, and testified to mitigating circumstances which, he argued, excused his recent failures to comply.  While this evidence ultimately was not persuasive either to Magistrate Judge Robbenhaar or to the Court in deciding whether to release Valdez pending his trial, it is enough to satisfy the defendant's burden of production under § 3142(e)(3).  Because the Court determines that Valdez meets his burden of production in the detention hearing, it disagrees with Magistrate Judge Robbenhaar's conclusion that the "defendant has not introduced sufficient evidence to rebut the presumption" and his decision to order detention "on that basis."  Detention Order at 2.

II.     **THE UNITED STATES MEETS ITS BURDEN OF SHOWING BY CLEAR-AND-CONVINCING EVIDENCE THAT NO CONDITION OR COMBINATION OF CONDITIONS OF RELEASE WILL REASONABLY ASSURE THE SAFETY OF <u>ANY OTHER PERSON AND THE COMMUNITY.</u>**

The Court concludes that no condition can reasonably assure the safety of others if Valdez is released pending trial.  Magistrate Judge Robbenhaar did not release Valdez, because Valdez would be "[s]ubject to [a] lengthy period of incarceration if convicted," had a "[p]rior criminal history," a "[h]istory of violence or use of weapons," and a "[l]ack of stable employment." Detention Order at 2.  Valdez' arguments that he is "not a danger to the community," and that the criminal history in the Bail Report is misleading, because "the vast majority of Mr. Valdez' charges have been dismissed for one reason or another," do not convince the Court that Valdez is not a danger to the community.  Appeal at 2.  Although Valdez argued that "out of his six convictions as an adult, . . . . four of those convictions are for . . . crimes that would not be considered legally crimes of violence for purposes of [the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1)("ACCA")] . . . . ," Tr.at 4:11-18 (Fooks), for the purposes of a pretrial detention hearing or appeal, the Court "analyzes the phrase 'crime of violence' under 18 U.S.C. § 3156(a)(4)(B)," and not under the ACCA, which defines violent felonies for sentencing purposes, <u>United States v. Vencomo-Reyes</u>, 2011 U.S. Dist. LEXIS 138823, at *25 n.5 (quoting 18 U.S.C. § 3156(a)(4)).

Section 3156(a)(4) defines a "crime of violence" as:

(A)     an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;

(B)     any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the court of committing the offense; or

(C)     any felony under chapter 77, 109A, 110, or 117; . . .

18 U.S.C. § 3156(a)(4).

Valdez' criminal history -- involving both convictions and charges that were dismissed -- includes violent offenses as § 3156(a)(4) defines that term. Valdez threatened or used actual physical force against another in his January 2009 conviction for false imprisonment and battery against a household member, see Bail Report at 5; Tr. 16:4-21 (Court, Fooks), and in his October, 2009, conviction for battery against a household member, see Bail Report at 5-6. Those convictions alone are sufficient to confirm he is a danger to the community. There are, however, twenty-four other arrests, nine of which are for allegedly violent crimes. See Bail Report at 4-10. Some of these arrests are recent. See Bail Report at 9-10. Although the charge was ultimately dismissed, Valdez was charged in 2019 with "Aggravated Battery Against a Household Member (Strangulation or Suffocation) and Criminal Sexual Penetration in the Third Degree." Response ¶ 1, at 2. See Bail Report at 9. Valdez' two 2009 convictions, his nine arrests for violent offenses, and his fifteen other arrests are "sufficient to find by clear-and-convincing evidence that he is a danger to the community." Tr. at 17:3-11 (Court). Just because the State of New Mexico dropped twenty-two cases against Valdez does not mean the Court cannot use the significant number of other arrests and charges that Valdez has to make its finding of danger. Valdez' history of domestic violence concerns the Court. See Tr. at 17:18-19 (Court). Although Valdez suggests that the Court release him to La Pasada Halfway House with GPS monitoring, see Appeal at 3-4, the Court doubts Valdez' ability to succeed at a halfway house. Valdez's criminal history shows eight failures to appear, four failures to comply, and two unsatisfactory discharges from probation. See Bail Report 4-10. The Court considered the condition of releasing Valdez to a halfway house, but, given Valdez' numerous failures to appear and failures to comply, the Court decided against it:

> About the only way that I think I would release him is to put him over at the halfway house under lockdown conditions with GPS monitoring. The problem is that I think

he's got a serious drug problem and I'm not comfortable with him leaving that house even for drug treatment. Looking over his pattern of being on probation, being released pretrial, the discharges, I don't think he's going to be successful over at the halfway house, I think he's going to fail there, I don't think he's going to be able to stay there. And I am concerned about him leaving.

Tr. at 18:9-20 (Court). The Court continued, "I'm not convinced that there is any combination of conditions that I would normally use to let somebody stay over at the halfway house that would reduce the risk to levels that mitigate the two risks that we have." Tr. at 19:4-8 (Court). Given the character of Valdez' current charges and the volume and character of his previous charges and convictions, the Court finds by clear-and-convincing evidence that no condition could reasonably assure the safety of others and the community were Valdez to be released pending trial. See Tr. at 17:21-24 (Court).

## III. THE UNITED STATES PROVES BY A PREPONDERANCE OF EVIDENCE THAT NO CONDITION OR COMBINATION OF CONDITIONS OF RELEASE WILL REASONABLY ASSURE VALDEZ' APPEARANCE.

In addition to being a danger to others and the community, Valdez is a flight risk. The Court concludes that the United States meets its burden to prove that Valdez is a flight risk by a preponderance of the evidence. See United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003). Valdez admits that his history shows "a number of failures to appear and failures to comply with conditions of release or probation," but argues that he is not a flight risk, because there are "conditions that can minimize the concerns" that the Court may have about Valdez' "ability to comply with a court's release order." Appeal at 3. Valdez suggests that the Court release him from custody with GPS monitoring and order substance abuse training, and argues that placement at La Pasada Halfway House would be effective in his case. See Appeal at 3-4. The Court agrees with the United States, however, that, given Valdez' numerous failures to appear and failures to comply, and Valdez' frequent travel to Mexico -- possibly without a passport --  Valdez presents

a flight risk.  See Tr. at 17:24-18:4 (Court).  In this case, Valdez is facing a lengthier prison sentence than he did on other charges when he failed to appear, see Response at 7; Bail Report at 5-7, and so has an even greater motive to not appear.  It is more likely than not that Valdez will not succeed at a halfway house; he will fail to obey the rules and will be discharged or flee.  It is more likely than not that the Court will have to send the United States Marshals to arrest him, and the Court does not want to put the United States Marshals in danger.  United States Marshals deserve to go home to their families each night, safe.  Valdez  has charges for resisting and evading a police officer, see Bail Report at 5, and for being a Fugitive from Justice, see Bail Report at 10.  Even with placement at a halfway house, drug treatment, and GPS monitoring, Valdez is likely still a flight risk: GPS monitoring cannot guarantee that Valdez will not flee from a halfway house, nor can it guarantee the safety of others and the community.  It is more likely than not that the Court will have to send the United States Marshals for him, and he will be a danger to the community.  The United States shows by a preponderance of evidence that there is no condition or combination of conditions that will ensure Valdez' appearance, and by clear-and-convincing evidence that no condition can reasonably assure the safety of others and the community.  Valdez cannot be released to his home or to his Uncle's residence in Albuquerque.  The only condition that would reduce his risk of danger to an acceptable level is the halfway house under lockdown conditions, but he will not succeed there.  In the end, there is no place for him to go that reduces the danger to the community and the risk of his failure to appear to an acceptable level.  As a result, the Court denies Valdez' appeal.

    IT IS ORDERED that: (i) the Defendant's Appeal of Detention Order, filed September 2, 2021 (Doc. 21), is denied; (ii) the Magistrate Judge's Order of Detention Pending Trial, filed May

12, 2021 (Doc. 17), is affirmed; and (iii) Defendant Jaime Valdez shall remain in the United States

Marshals' custody pending trial.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred J. Federici
  Acting United States Attorney
Nora M. Wilson
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*


Margaret Katze
  Federal Public Defender
Devon Fooks
  Assistant Federal Public Defender, Senior Litigator
Federal Public Defender's Office
Albuquerque, New Mexico

    *Attorneys for the Defendant*